UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| TYLER BAKER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GMC LLC, a Colorado company<br><br>Defendant. | NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff Tyler Baker ("Plaintiff" or "Baker") brings this Class Action Complaint and Demand for Jury Trial against Defendant GMC LLC d/b/a Green Man Cannabis[1] ("Defendant" or "GMC") to stop the Defendant from violating the Telephone Consumer Protection Act by sending telemarketing text messages to consumers without consent, including those who registered their phone numbers on the National Do Not Call registry ("DNC") and who expressly requested that the text messages stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Baker, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1. Plaintiff Tyler Baker is a resident of Underhill, Vermont.

2. Defendant GMC is a Colorado registered company headquartered in Denver, Colorado. Defendant GMC conducts business throughout this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

---

[1] https://www.greenmancannabis.com/privacy-policy/

4. This Court has personal jurisdiction over the Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant resides in this District and the wrongful conduct giving rise to this case was directed from this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. The National Do Not Call Registry provides for consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

7. A listing on the DNC "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in December 2020 alone, at a rate of 124.8 million per day. www.robocallindex.com (last visited Jan. 18, 2021).

13. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[2]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[3]

## COMMON ALLEGATIONS

16. GMC owns and operates 2 retail stores in Colorado that sell marijuana and marijuana-related items to consumers.[4]

17. As part of its business practice, GMC places solicitation text messages to consumers in order to solicit them to purchase marijuana and marijuana-related items.

18. Unfortunately, these text messages are being sent to consumers who do not have an existing business relationship with Defendant without their express written consent even when they have registered their phone numbers on the DNC.

---

[2] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[3] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[4] https://www.greenmancannabis.com/

19. Furthermore, Defendant lacks a sufficient stop call/text system that results in Defendant continuing to send text messages to consumers who have requested that the Defendant stop text messaging them.

20. For example, in Plaintiff Baker's case, Defendant sent multiple text messages to his phone number registered on the DNC, despite his requesting that Defendant stop texting his cell phone.

21. In response to these text messages, Plaintiff Baker files this lawsuit seeking monetary and injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF BAKER'S ALLEGATIONS

22. Plaintiff Baker registered his phone number on the DNC on November 4, 2004.

23. Plaintiff Baker's phone number is not associated with a business and is used for personal use only.

24. On September 29, 2020 at 2:21 PM, Plaintiff Baker received an unsolicited text message to his cell phone from Defendant from the phone number 720-487-9023 promoting Defendant's business.

25. At 4:28 PM on September 29, 2020, Plaintiff replied "Stop" to 720-487-9023:



26. Based on an investigation conducted by Plaintiff's attorneys, 720-487-9023 provides a message that the phone number is not configured for incoming calls when dialed.

27. Despite his stop request, Plaintiff received a second unsolicited text message from Defendant on October 28, 2020 at 3:24 PM from the phone number 720-679-8611.

28. Plaintiff replied "Stop" to this text message as well.

29. Due to a delay in the text message service Plaintiff uses, his cell phone displays "Stop" at 3:32 PM and confirmation of the opt-out request at 3:27 PM:



30.     When loyaltyplus.co/jdmFP is visited in the above text message, it forwards directly to an image promoting Defendant's products.[5]

---

[5] The link leads to: https://lbmlp-campaigns.s3.us-east-2.amazonaws.com/campaign-images/427e40a3-e58f-46ad-985b-0c34a1372082/c4a490e5-fa4f-4495-8bbc-c1ca9b1f67c6

[6]

31.     Plaintiff has never provided Defendant with consent to send him unsolicited text messages or calls to his cell phone.

32.     In addition, Defendant failed to stop texting the Plaintiff after Plaintiff opted-out from the first text message that he received.

33.     The unauthorized solicitation text messages that Plaintiff received from GMC, as alleged herein, have harmed Plaintiff Baker in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

34.     Seeking redress for these injuries, Plaintiff Baker, on behalf of himself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection

---

[6] https://lbmlp-campaigns.s3.us-east-2.amazonaws.com/campaign-images/427e40a3-e58f-46ad-985b-0c34a1372082/c4a490e5-fa4f-4495-8bbc-c1ca9b1f67c6

Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited telemarketing text messages to cellular telephones that are registered on the DNC and otherwise prohibits companies from sending any telemarketing text messages if they fail to implement adequate policies and procedures for maintaining an internal do not call list.

## CLASS ALLEGATIONS

35.   Plaintiff Baker brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of the Defendant) texted more than one time, (2) within any 12-month period, (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff, and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to text Plaintiff, or (b) they obtained the person's number in the same manner as Defendant claims they obtained Plaintiff's number.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant (or an agent acting on behalf of Defendant) texted more than one time (2) within any 12-month period (3) for substantially the same reason Defendant texted Plaintiff.

36.   The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Baker anticipates the need to amend the Class definitions following appropriate discovery.

37.   **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

38. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

   (a) whether Defendant GMC systematically sent multiple text messages to Plaintiff and other consumers whose telephone numbers were registered with the DNC without first obtaining consent to send the text messages;

   (b) whether Defendant GMC's text messages to Plaintiff and other consumers were sent for telemarketing purposes;

   (c) whether Defendant GMC sent telemarketing text messages to consumers after being instructed to stop texting;

   (d) whether the Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

   (e) whether Defendant's conduct constitutes a violation of the TCPA;

   (f) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

39. **Adequate Representation**: Plaintiff Baker will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Baker has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Baker and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Baker nor his counsel have any interest adverse to the Classes.

40. **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes

uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Baker. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Registry Class)**

41. Plaintiff Baker repeats and realleges paragraphs 1 through 40 of this Complaint and incorporates them by reference.

42. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

43. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

44. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is

10

maintained by the federal government.

45. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

46. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

47. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**SECOND CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Internal Do Not Call Class)**

48. Plaintiff Baker repeats and realleges paragraphs 1 through 40 of this Complaint and incorporates them by reference.

49. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record

the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

50. Defendant or their agents sent marketing text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be texted by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing calls/texts.

51. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid

receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

52. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

53.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Baker individually and on behalf of the Classes, prays for the following relief:

54. An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Baker as the representative of the Classes; and appointing his attorneys as Class Counsel;

55. An award of actual and/or statutory damages and costs;

56. An order declaring that Defendant's actions, as set out above, violate the TCPA;

57. An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Classes; and

58. Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Baker requests a jury trial.

DATED this 18th day of January, 2021.    **TYLER BAKER**, individually and on behalf of all others similarly situated,

By: /s/ Stefan Coleman
One of Plaintiff's Attorneys

Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, P.A.
201 S. Biscayne Blvd, 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Attorneys for Plaintiff and the putative Classes*

14